UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
In re:

CESAR CEDILLO,

                                                    Chapter 7
                              Debtor.
---------------------------------------------------------------------x    Case No. 13-42445-ess
CARVER FEDERAL SAVINGS BANK,

                              Plaintiff,

            -against-

CESAR CEDILLO,

                                                    Adv. Pro. No.: 15-01001-ess
                              Defendants.
---------------------------------------------------------------------x

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO RULE 7056-1 OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK LOCAL BANKRUPTCY RULES

Plaintiff, Carver Federal Savings Bank ("Carver"), submits the following statement of undisputed facts, pursuant to Rule 7056-1 of the United States Bankruptcy Court for the Eastern District of New York Local Bankruptcy Rules, in support of its motion for summary judgment (the "Motion"):

**The Defendant's Indebtedness to Carver**

1.    In early 2005, Cesar Cedillo (the "Defendant") applied for several loans from Carver on behalf of various corporations controlled by him, which loans were to be personally guaranteed by the Defendant. *See* Raborn Aff.[1] at ¶ 3.

---

[1] References to "Raborn Aff." shall refer to the Affidavit of James A. Raborn, sworn to on June 24, 2016, submitted in support of the Motion.

2.  On July 28, 2005, the Defendant, as President of Troutman Realty Corp. ("Troutman"), executed a Consolidated and Restated Mortgage Note in the original principal amount of $660,650.00 in favor of Carver (the "Troutman Note"), which was secured by a mortgage of even date on real property located at 46 Starr Street, Brooklyn, New York (the "Troutman Mortgage"). *See* Raborn Aff. ¶ 8.

3.  In connection with the Troutman Note and Troutman Mortgage, the Defendant executed a Springing Guaranty of Payment ("Troutman Guaranty"), in which the Defendant personally guaranteed the amounts due under the Troutman Note to Carver. *Id.*

4.  On July 28, 2005, the Defendant, as President of 654 Myrtle Ave. Corp. ("654 Myrtle"), executed a Consolidated and Restated Mortgage Note in the original principal amount of $633,750.00 in favor of Carver (the "654 Myrtle Note"), which was secured by a mortgage of even date on real property located at 654 Myrtle Avenue, Brooklyn, New York (the "654 Myrtle Mortgage"). *Id.* at ¶ 9.

5.  In connection with the 654 Myrtle Note and 654 Myrtle Mortgage, the Defendant executed a Guaranty of Payment ("654 Myrtle Guaranty"), in which the Defendant personally guaranteed the amounts due under the 654 Myrtle Note to Carver. *Id.*

6.  On July 28, 2005, the Defendant, as President of 1111 Willoughby Avenue Realty Corp. ("1111 Willoughby"), executed a Consolidated and Restated Mortgage Note in the original principal amount of $440,000.00 in favor of Carver (the "1111 Willoughby Note," together with the Troutman Note and 654 Myrtle Note, the "Notes"), which was secured by a mortgage of even date on real property located at 1111 Willoughby Avenue, Brooklyn, New York (the "1111 Willoughby Mortgage," together with the Troutman Mortgage and the 654 Myrtle Mortgage, the "Mortgages"). *Id.* at ¶ 10.

2

7. In connection with the 1111 Willoughby Note and 1111 Willoughby Mortgage, the Defendant executed a Springing Guaranty of Payment (the "1111 Willoughby Guaranty," together with the Troutman Guaranty and 654 Myrtle Guaranty, the "Guarantees"), in which the Defendant personally guaranteed the amounts due under the 1111 Willoughby Note to Carver. The Notes, Mortgages and Guarantees shall be collectively referred to as the "Loans". *Id.*

8. In or around March 2009, Troutman, 654 Myrtle and 1111 Willoughby defaulted under their respective Notes and Mortgages and the Defendant defaulted under his Guarantees. *Id.* at ¶ 11.

9. As a result, Carver commenced actions to foreclose the Mortgages in the New York State Supreme Court, County of Kings ("State Court"), while preserving its right deficiency judgments against the Defendant pursuant to the Guarantees. *Id.* at ¶ 12.

10. All three (3) of the Mortgages were ultimately foreclosed and Carver was awarded three (3) separate judgments against the Defendant representing the deficiency amounts due and owing to Carver after the foreclosures. *Id.* at ¶ 13.

11. With respect to the 1111 Willoughby Guarantee, the State Court issued a Deficiency Judgment Order against the Defendant, in favor of Carver, dated October 24, 2011, in the amount of $72,540.00 (the "First Judgment"). *Id.* at ¶ 14; *see also* Exhibit[2] 2.

12. With respect to the 654 Myrtle Guarantee, the State Court issued a Resettled Judgment and Order Granting Deficiency against the Defendant, in favor of Carver, dated November 27, 2012, in the amount of $166,447.29 (the "Second Judgment"). *See* Raborn Aff. at ¶15; *see also* Exhibit 3.

13. With respect to the Troutman Guarantee, the State Court issued an Order Granting Deficiency against the Defendant, in favor of Carver, dated April 24, 2013, in the amount of $124,763.69, plus interest in the amount of 9.0% from an after April 7, 2011 (the "Third

---

[2] All references to "Exhibit" refer to those exhibits attached to the Raborn Aff. and the Declaration of Frank C. Dell'Amore in support of the Motion, dated June 27, 2016 ("Dell'Amore Decl.").

Judgment," together with the First and Second Judgments, the "Judgments"). *See* Raborn Aff. at ¶16; *see also* Exhibit 4.

14. By virtue of the Judgments, Carver is a creditor of the Defendant and, as of April 21, 2013, was owed $408,030.66. *See* Raborn Aff. at ¶17; *see also* Exhibits 2-4.

**Carver's Reliance on the Defendant's False Financial Statement**

15. Carver's standard practice in evaluating the credit-worthiness of individuals seeking to borrow money from it, or individuals who will be guaranteeing the payment of obligations of another person or entity, includes a requirement that the individual complete a personal financial statement, detailing their income, assets and liabilities, so that Carver can make a determination as to that individual's ability to repay the loan. *See* Raborn Aff. at ¶ 4.

16. The Defendant submitted to Carver a signed Personal Financial Statement dated April 4, 2005 (the "PFS"). *Id.* at ¶ 5; *see also* Exhibit 1.

17. When signing the PFS, the Defendant expressly acknowledged that he was submitting the PFS "for the purpose of procuring, establishing and maintaining credit...with [Carver]." *See* Exhibit 1 (page 4).

18. After reviewing the PFS, Carver decided to make the Loans. *See* Raborn Aff. at ¶ 7.

19. In the PFS, Defendant represented to Carver that he maintained 100% ownership interests in Troutman Realty Corp. ("Troutman"), 654 Myrtle Ave. Corp. ("654 Myrtle"), 1111 Willoughby Avenue Realty Corp. ("1111 Willoughby"), 140 Franklin Ave Corp. and Kathy & Tania Inc. (collectively, the "Corporations"). *See* Exhibit 1 (page 2).

20. The Defendant never owned 100% of any of the Corporations. *See* Exhibit 13 (pages 63-65).

21. Carver relied on the accuracy of the information contained in the PFS when making the Loans. *See* Raborn Aff. at ¶ 19.

22. Carver would not have made the Loans if it was aware that any of the information contained on the PFS was false. *Id.* at ¶¶ 4, 20-21.

4

FCD/D1122136v2/M054342/C0086950

**The Filing of the Bankruptcy Case and this Adversary Proceeding**

23. On April 24, 2013 (the "Filing Date"), the Defendant filed a Voluntary Petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code. *See* Exhibit 5.

24. On May 8, 2013, the Defendant filed an Amended Voluntary Petition, together with Summary of Schedules, Schedule A - Real Property, Schedule B - Personal Property, Schedule C - Property Claimed as Exempt, Schedule D - Creditors Holding Secured Claims, Schedule E - Creditors Holding Unsecured Priority Claims, Schedule F - Creditors Holding Unsecured Nonpriority Claims, Schedule G - Executory Contracts and Unexpired Leases, Schedule H - Codebtors, Schedule I - Current Income of Individual Debtor(s), Schedule J - Current Expenditures of Individuals Debtor(s), Declaration Concerning Debtor's Schedules, Statement of Financial Affairs and several other documents (all of the foregoing shall be collectively referred to as the "Petition"). *See* Exhibits 6 and 7.

25. On June 5, 2013, the Defendant appeared for a 341 meeting of the creditors ("341 Meeting") and was questioned by the Chapter 7 Trustee and other creditors. *See* Exhibit 8.

26. At the 341 Meeting, the Defendant represented that the entirety of the Petition was true and accurate. *Id.* (page 6).

27. On August 6, 2013, the Defendant filed a Schedule B - Personal Property - Amended ("Schedule B") and Statement of Financial Affairs - Amended ("SOFA") (the term "Petition," as defined above, shall also include Schedule B and the SOFA). *See* Exhibit 9.

28. The Defendant signed the Voluntary Petition, Amended Voluntary Petition, Declaration Concerning Debtor's Schedules and SOFA under the penalty of perjury and, thereby, represented that the information contained therein was true and correct. *See* Exhibits 5-7, 9.

29. On January 2, 2015, Carver commenced this adversary proceeding by the filing of a Complaint (the "Complaint"). *See* Exhibit 10.

30. On March 10, 2015, the Defendant filed an answer to the Complaint. *See* Exhibit 11.

31. On June 12, 2015, the Defendant filed an Amended Answer to the Complaint. *See* Exhibit 12.

FCD/D1122136v2/M054342/C0086950

**The Hardware Store**

32. For many years, the Defendant owned and operated Kevin & Richard Hardware Corp. (the "Hardware Store") which was located at 645 Myrtle Avenue, Brooklyn, New York ("645 Myrtle Avenue"). *See* Exhibit 13 (pages 8-9, 15-17).

33. The Defendant failed to pay substantial amounts of sales tax due to New York State, which was incurred as a result of the operation of the Hardware Store (the "Tax Arrears"). *Id.* (pages 15-16).

34. As a result of the Tax Arrears, the Defendant was concerned that New York State was "going to close down" the Hardware Store. *Id.* (page 17).

35. On October 1, 2012, the Defendant transferred all assets of the Hardware Store to NY Electric Supplies LLC ("NY Electric"). *See* Exhibits 13 (page 15-17, 36) and 16.

36. NY Electric is a limited liability company which is wholly owned by the Defendant's wife, Rosa a/k/a Sylvia Vasquez ("Rosa"). *See* Exhibit 14 (Pages 9-10).

37. The Defendant transferred the assets of the Hardware Store to prevent New York State from closing down the Hardware Store. *See* Exhibits 13 (page 15-17).

38. NY Electric executed a Promissory Note, dated October 1, 2012, in the amount of $50,000.00, payable to Defendant in equal monthly payments of $1,454.06 from November 1, 2012 to October 2, 2015 ("Note"). *See* Exhibit 15.

39. The Note is secured by a Chattel Mortgage, dated October 1, 2012, in which NY Electric gave the Defendant a security interest in all of the assets that were simultaneously being transferred to NY Electric (the "Security Interest"). *See* Exhibit 16.

40. No payments have ever been made to Defendant pursuant to the Note. *See* Exhibits 13 (pages 18, 28, 32-33) and 14 (page 26).

41. On July 7, 2014, the Defendant executed an Affidavit in Support of Order to Show Cause, sworn to before a notary public (the "Affidavit"), in which he stated that he was still operating the Hardware Store at 645 Myrtle Avenue. *See* Exhibit 17 at ¶ 1.

6

42. In the Affidavit, the Defendant requested a temporary restraining order to stay the plaintiff in that action from evicting "Cesar M. Cedillo doing business as Kevin and Richard Hardware Corp from the property which is the subject of the within foreclosure action." *Id.* at ¶ 5.

### 656 Myrtle Avenue Realty Corp.

43. Prior to the Filing Date, the Defendant was the President of 656 Myrtle Avenue Realty Corp. *See* Exhibits 13 (page 86, 95) and Exhibit 18.

44. There are no documents indicating that the Defendant ever ceased being the President of 656 Myrtle Avenue Realty Corp. *See* Exhibit 13 (page 91, 95-96).

45. Prior to the Filing Date, the Defendant was a shareholder and/or owner of 656 Myrtle Avenue Realty Corp. *See* Exhibits 13 (page 88) and Exhibit 18.

46. There are no documents indicating that the Defendant ever ceased being a shareholder and/or owner of 656 Myrtle Avenue Realty Corp. *See* Exhibits 13 (page 91, 95-96).

47. On or about February 27, 2014, after the Filing Date, 656 Myrtle Avenue Realty Corp. sold certain property owned by it for $875,000.00. *See* Exhibit 19.

### Cedillo's False Statements and Omissions in the Petition

48. The Defendant did not disclose his interest in the 656 Myrtle Avenue Realty Corp. in the Petition. *See* Exhibits 5, 6, 7 and 9.

49. The Defendant does not disclose the existence of the Security Interest in the Petition. *See* Exhibits 5, 6, 7 and 9.

50. The Defendant did not disclose his ownership interest in the Hardware Store in the Petition. *See* Exhibits 5, 6, 7 and 9.

51. The Defendant falsely stated in the Petition that the amount due to him pursuant to the Note was only $1.00. *See* Exhibits 13 (pages 18, 28, 32-33) and 14 (page 26).

52. In March and April 2011, the Defendant received deposits into his bank account in the amount of $13,627.01. *See* Exhibit 21 (page 3 of 6).

53. The Defendant did not disclose his receipt of the funds referenced in the preceding paragraph in his SOFA. *See* Exhibit 9 (SOFA, Questions 1 and 2).

54. In June and July 2011, the Defendant received deposits to his bank account in the amount of $8,475.86. *See* Exhibit 22 (page 3 of 6).

55. The Defendant did not disclose his receipt of the funds referenced in the preceding paragraph in his SOFA. *See* Exhibit 9 (SOFA, Questions 1 and 2).

Dated: Garden City, New York.
      June 27, 2016

JASPAN SCHLESINGER LLP
*Attorneys for Plaintiff*

By: _____

Frank C. Dell'Amore, Esq.
300 Garden City Plaza
Garden City, New York 11530
(516) 393-8289

8