UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:

CESAR CEDILLO,

                              Debtor.

Chapter 7

-------------------------------------------------------------------x

Case No. 13-42445-ess

CARVER FEDERAL SAVINGS BANK,

                              Plaintiff,

        -against-

CESAR CEDILLO,

Adv. Pro. No.: 15-01001-ess

                            Defendants.

-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Jaspan Schlesinger LLP**
**300 Garden City Plaza**
**Garden City, New York 11530**
**(516) 393-8289**
*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................ 1

SUMMARY JUDGMENT STANDARD .................................................................... 5

ARGUMENT............................................................................................................... 6

    POINT I ................................................................................................................. 6

    THE DEBT OWED TO CARVER BY DEFENDANT IS NON-DISCHARGEABLE ........... 6

        A.    Statement in Writing..................................................................... 7

        B.    Materially False ............................................................................ 7

        C.    The Statement Concerns the Defendant's Financial Condition...................... 8

        D.    Carver Reasonably Relied Upon the PFS ..................................... 8

        E.    The PFS was Made or Published with Intent to Deceive............................. 10

    POINT II ............................................................................................................. 11

    THE DEFENDANT SHOULD BE DENIED A DISCHARGE PURSUANT TO SECTION OF 727(a)(2) OF THE UNITED STATES BANKRUPTCY CODE....................................... 11

    POINT III............................................................................................................. 13

    THE DEFENDANT SHOULD BE DENIED A DISCHARGE PURSUANT TO SECTION 727(a)(4)(A) OF THE UNITED STATES BANKRUPTCY CODE ..................................... 13

        A.    First Element - The Defendant Made Statements Under Oath ..................... 14

        B.    Second Element - The Defendant's Statements Were False ......................... 15

        C.    Third Element - The Statements Related Materially to the Bankruptcy Case.............. 17

        D.    Fourth Element - The Defendant's Knowledge............................................. 18

        E.    Fifth Element - The Defendant's Intent to Deceive ..................................... 19

CONCLUSION.......................................................................................................... 22

# TABLE OF AUTHORITIES

**Federal Cases**

*Agai v. Antoniou (In re Antoniou),*
515 B.R. 9 (Bankr. E.D.N.Y. 2014) ............................................................ 14, 18, 21

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................................. 5

*Bank of India v. Gobindram (In re Gobindram),*
2014 Bankr. LEXIS 2808 (Bankr. E.D.N.Y. June 20, 2014) ...................................... 14, 15, 21

*Beer Sheva Realty Corp. v. Pongvitayapanu (In re Pongvitayapanu),*
487 B.R. 130 (Bankr. E.D.N.Y. 2013) ............................................................ 13, 14, 18, 20, 21

*Cadle Co. v. King (In re King),*
272 B.R. 281 (2002) ............................................................................................. 20

*Citik Ka Wah Bank v. Wong (In re Wong),*
291 B.R. 266 (Bankr. S.D.N.Y. 2003) ...................................................................... 9

*Diorio v. Kreisler-Borg Constr. Co.,*
407 F.2d 1330 (2d Cir. 1969) ............................................................................... 20

*Dubrowsky v. Estate of Perlbinder (In re Dubrowsky),*
244 B.R. 560 (E.D.N.Y. 2000) ............................................................................... 14

*FDIC v. Reisman (In re Reisman),*
149 B.R. 31 (Bankr. S.D.N.Y. 1993) .................................................................... 7, 9

*First Fed. Sav. & Loan v. Kelley (In re Kelley),*
163 B.R. 27 (Bankr. E.D.N.Y. 1993) ............................................................... 7, 8, 10

*Forrest v. Bressler (In re Bressler),*
387 B.R. 446 (Bankr. S.D.N.Y. 2008) .............................................................. 17, 20

*Gerritsen Beach Invs. Ltd. v. Jemal (In re Jemal),*
516 B.R. 238 (Bankr. E.D.N.Y. 2014) ...................................................................... 8

*Hudson Valley Water Res., Inc. v. Boice (In re Boice),*
149 B.R. 40 (S.D.N.Y. 1992) ....................................................................... 7, 8, 10

*Saloman v. Kaiser (In re Kaiser),*
722 F.2d 1574 (2d Cir. 1983) ............................................................................... 12

*In re Nazarian,*
18 B.R. 143 (Bankr. D. Md. 1982) ......................................................................... 19

*Lincoln First Bank v. Tomei (In re Tomei),*
24 B.R. 204 (Bankr. W.D.N.Y. 1982) ...................................................................... 9

*J.P. Morgan Chase Bank v. Smith (In re Smith),*
  2012 Bankr. LEXIS 2060 (Bankr. E.D.N.Y. May 8, 2012) ................................... 6, 7, 8, 9, 10

*Lisa Ng v. Adler (In re Adler),*
  494 B.R. 43 (Bankr. E.D.N.Y. 2013) .................................................. 14, 15, 16, 20

*Marrama v. Citizens Bank,*
  549 U.S. 365 (2007) ............................................................................................. 13

*Milton Abeles, Inc. v. Farmers Pride, Inc.,*
  2007 U.S. Dist. LEXIS 50071 (E.D.N.Y. July 11, 2007) ........................................ 5

*Minsky v. Silverstein,*
  151 B.R. 657 (Bankr. E.D.N.Y. 1993) ........................................................... 12, 14

*Moreo v. Rossi (In re Moreo),*
  437 B.R. 40 (E.D.N.Y. 2010) ................................................................... 14, 17, 19

*O'Connell v. DeMartino (In re DeMartino),*
  448 B.R. 122 (Bankr. E.D.N.Y. 2011) ............................................................ 14, 20

*Pereira v. Gardner (In re Gardner),*
  384 B.R. 654 (Bankr. S.D.N.Y. 2008) .................................................................. 11

*Rodriguez v. City of N.Y.,*
  72 F.3d 1051 (2d Cir. 1995) ................................................................................... 5

*W. World Ins. Co. v. Stack Oil, Inc.,*
  922 F.2d 118 (2d Cir. 1990) ................................................................................... 6

## Federal Statutes

11 U.S.C. § 523 (2012) ........................................................................... 7, 8, 10
11 U.S.C. § 727(a)(2) (2012) ........................................... 1, 5, 6, 7, 9, 11, 13, 22
11 U.S.C. § 727(a)(4) (2012) ............................................... 13, 14, 15, 18

## Federal Rules

Fed. R. Bankr. P. 7056 ............................................................................................. 5
Fed. R. Civ. P. 56 .................................................................................................... 1
Fed. R. Civ. P. 56(a) ............................................................................................... 5

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by plaintiff, Carver Federal Savings Bank ("Carver"), in support of its motion for summary judgment, pursuant to Fed. R. Civ. P. 56, made applicable by Federal Rule of Bankruptcy Procedure 7056: (a) on its First Cause of Cause seeking an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(B); or (b) in the alternative, on its Second and/or Fourth Causes of Action seeking to deny the discharge of defendant, Cesar Cedillo ("Defendant"), pursuant to 11 U.S.C. §§ 727(a)(2) and (4) (the "Motion").

It is respectfully submitted that the debt owed to Carver should not be discharged because the Defendant procured such debt through the use of a knowingly false written statement concerning his financial condition, which he presented to Carver for the purpose of obtaining several loans.  Carver reasonably relied on these writings, which contained knowingly false information, when it made various loans to entities controlled by the Defendant.

In the alternative, the Defendant's discharge should be denied all together as a result of the Defendant transferring certain of his assets to his wife within one (1) year filing his bankruptcy petition, with the intend of hinder, delay and/or defraud his creditors. The Defendant should also be denied a discharge due to him knowingly and fraudulently making a false oath or account in connection with the filing of his petition herein.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the relevant factual background, the Court is respectfully referred to the Affidavit of James A. Raborn in support of the Motion, sworn to on June 24, 2016 ("Raborn Aff."), with annexed exhibits 1 through 4, the Declaration of Frank C. Dell'Amore in support of the Motion, dated June 27, 2016 ("Dell'Amore Decl."), with annexed Exhibits 5 through 22, and Plaintiff's Statement of Undisputed Material Facts Pursuant to Rule 7056-1 of the United States Bankruptcy Court for the Eastern District of New York Local Bankruptcy Rules, dated June 27,

2016 ("Undisputed Facts"), all submitted herewith in support of the Motion.[1]  A summary of the relevant factual and procedural history is set forth below.

In early 2005, the Defendant applied for several loans from Carver on behalf of various corporations controlled by him.  *See* Raborn Aff. at ¶ 3.  On or about April 4, 2005, the Defendant submitted a Personal Financial Statement ("PFS") to Carver.  *Id.* at ¶ 5; *see also* Exhibit[2] 1.  In the PFS, Defendant represented to Carver that he maintained 100% ownership interests in the following five (5) different corporations:  140 Franklin Ave Corp., Kathy & Tania Inc., Troutman Street Realty Corp., 654 Myrtle Ave Corp. and 1111 Willoughby Ave Realty Corp (collectively, the "Corporations").  *See* Exhibit 1 (page 2).  In reliance on the information contained in the PFS, Carver made loans to several of the Corporations, which were secured by mortgages on properties owned by the Corporations (the "Loans").  *See* Raborn Aff. at ¶¶ 7-10, 19-21.  The Defendant personally guaranteed the repayment of each of the Loans.  *Id.* at ¶¶ 8-10.

As a result of various defaults under the Loans, and the Defendant's failure to pay the amounts due thereunder, Carver commenced actions to foreclosure the mortgages securing the Loans and ultimately obtained three (3) judgments against the Defendant, in the total amount of $408,030.66 as of April 24, 2013 (inclusive of post-judgment interest).  *Id.* at ¶¶ 11-16; *see also* Exhibits 2-4.

For many years, the Defendant owned and successfully operated Kevin & Richard Hardware Corp. (the "Hardware Store") which was located at 645 Myrtle Avenue, Brooklyn, New York ("645 Myrtle Avenue").  *See* Exhibit 13 (pages 8-9, 15-17).  Despite the success of the Hardware Store, the Defendant failed to pay substantial amounts of sales tax due to New York State (the "Tax Arrears").  *Id.* (pages 15-16).  As a result of the Tax Arrears, the Defendant

---

[1] Any capitalized terms not specifically defined herein shall have the same meaning as ascribed in the Dell'Amore Decl., Raborn Aff. and/or Undisputed Facts.

[2] All references to "Exhibit" refer to those exhibits attached to the Raborn Aff. and Dell'Amore Decl.

was concerned that New York State was "going to close down" the Hardware Store. *Id.* (page

17). Thus, on October 1, 2012, to prevent New York State from closing down the Hardware

Store, the Defendant transferred all assets of the Hardware Store to NY Electric Supplies LLC

("NY Electric"). *See* Exhibits 13 (page 15-17, 36) and 16. NY Electric is a limited liability

company which is wholly owned by the Defendant's wife, Rosa a/k/a Sylvia Vasquez ("Rosa").

*See* Exhibit 14 (Pages 9-10). As "consideration" for this transfer, NY Electric executed a

Promissory Note, dated October 1, 2012, in the amount of $50,000.00, payable to Defendant in

equal monthly payments of $1,454.06 from November 1, 2012 to October 2, 2015 ("Note"). *See*

Exhibit 15. The Note is secured by a Chattel Mortgage, dated October 1, 2012, in which NY

Electric gave the Defendant a security interest in all of the assets that were simultaneously being

transferred to NY Electric. *See* Exhibit 16. No payments have ever been made to Defendant

pursuant to the Note and no consideration whatsoever has been given to Defendant in exchange

for his transfer of the Hardware Store to NY Electric. *See* Exhibits 13 (pages 18, 28, 32-33) and

14 (page 26).

On April 24, 2013 (the "Filing Date"), the Defendant filed a Voluntary Petition for relief

pursuant to Chapter 7 of the United States Bankruptcy Code. *See* Exhibit 5. On May 8, 2013,

the Defendant filed an Amended Voluntary Petition, together with Summary of Schedules,

Schedule A - Real Property, Schedule B - Personal Property, Schedule C - Property Claimed as

Exempt, Schedule D - Creditors Holding Secured Claims, Schedule E - Creditors Holding

Unsecured Priority Claims, Schedule F - Creditors Holding Unsecured Nonpriority Claims,

Schedule G - Executory Contracts and Unexpired Leases, Schedule H - Codebtors, Schedule I -

Current Income of Individual Debtor(s), Schedule J - Current Expenditures of Individuals

Debtor(s) (the foregoing Schedules A through J shall be collectively referred to as the

"Schedules"), Declaration Concerning Debtor's Schedules, Statement of Financial Affairs and

several other documents (all of the foregoing shall be collectively referred to as the "Petition"). *See* Exhibits 6 and 7.

On June 5, 2013, the Defendant appeared for a 341 meeting of the creditors ("341 Meeting") and was questioned by the Chapter 7 Trustee and other creditors. *See* Exhibit 8. At the 341 Meeting, the Defendant represented that the entirety of the Petition was true and accurate. *Id.* (page 6).

On August 6, 2013, the Defendant filed a Schedule B - Personal Property - Amended ("Schedule B") and Statement of Financial Affairs - Amended ("SOFA") (the term "Petition," as defined above, shall also include Schedule B and the SOFA). *See* Exhibit 9. Neither Schedule B nor the SOFA make any reference to the Defendant's interest in the Hardware Store or his security interest in the various assets transferred to his wife's company. *Id.*

On July 7, 2014, in connection with a foreclosure proceeding relating to 645 Myrtle Avenue, the Defendant executed an Affidavit in Support of Order to Show Cause, sworn to before a notary public (the "Affidavit"), in which he stated, under oath, that he was still operating the Hardware Store at 645 Myrtle Avenue, despite the fact that he transferred of the Hardware Store's assets to his wife's company almost two (2) prior thereto. *See* Exhibit 17 at ¶ 1. In the Affidavit, the Defendant requested a temporary restraining order to stay the plaintiff in that action from evicting "Cesar M. Cedillo doing business as Kevin and Richard Hardware Corp from the property which is the subject of the within foreclosure action." *Id.* at ¶ 5.

On January 2, 2015, Carver commenced this adversary proceeding by the filing of a Complaint (the "Complaint"). *See* Exhibit 10. On March 10, 2015, the Defendant filed an answer to the Complaint. *See* Exhibit 11. On June 12, 2015, the Defendant filed an Amended Answer to the Complaint. *See* Exhibit 12. Thereafter, the parties engaged in extensive discovery. This Motion is now being filed seeking summary judgment on the First Cause of

Action asserted in the Complaint, which seeks a determination that the debt owed by Defendant to Carver is non-dischargeable pursuant to Section 523(a)(2)(B) of the United States Bankruptcy Code (the "Code"). In the alternative, this Motion seeks summary judgment on the Second and Fourth Causes of action asserted in the Complaint seeking to deny the Defendant's discharge pursuant to Sections 727(a)(2) and (4) of the Code.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056, governs motions for summary judgment. Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden of showing that the undisputed facts entitle it to judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (internal citation omitted). In order to defeat a motion for summary judgment, the non-moving party "must 'demonstrate more than some metaphysical doubt as to the material facts', and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 2007 U.S. Dist. LEXIS 50071 * 4 (E.D.N.Y. July 11, 2007) (internal citations omitted). Those specific facts must be more than "conclusory statements, conjecture, or speculation." *Id.* (internal citations omitted). The non-movant "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed

material facts, or defeat the motion through mere speculation or conjecture". *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (internal citation omitted).

Under the circumstances presented in this adversary proceeding, it is respectfully submitted that summary judgment is appropriate in favor of Carver and the Court should respectfully issue an order declaring that the debt owed by Defendant to Carver is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) or, in the alternative, denying the Defendant's discharge pursuant 11 U.S.C. § 727(a)(2) and/or (4).

## ARGUMENT

### POINT I

### THE DEBT OWED TO CARVER BY DEFENDANT IS NON-DISCHARGEABLE

"In an action commenced to determine the dischargeability of a debt, the burden of proof lies with the Plaintiff under a preponderance of the evidence standard." *J.P. Morgan Chase Bank, N.A. v. Smith (In re Smith)*, 2012 Bankr. LEXIS 2060, * 9 (Bankr. E.D.N.Y. May 8, 2012). Section 523(a)(2)(B) of the Bankruptcy Code sets forth an exception from discharge for any debt:

    (2)    for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by –

    (B)    use of a statement in writing –

        (i)    that is materially false;

        (ii)    respecting the debtor's or an insider's financial condition;

        (iii)    on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

        (iv)    that the debtor caused to be made or published with the intent to deceive.

11 U.S.C. § 523(a)(2)(B).

To prevail on a claim under 11 U.S.C. § 523(a)(2)(B), "the Plaintiff must show the debt was obtained by a materially false statement in writing and the Plaintiff reasonably relied on the false statement." *Smith*, 2012 Bankr. LEXIS 2060 at * 11.

## A.   Statement in Writing

It has been noted that, "[t]o satisfy the first element under Code § 523(a)(2)(B)(i), Plaintiff must establish that Debtors obtained the extension of credit by the use of a writing." *Hudson Valley Water Resources, Inc. v. Boice (In re Boice)*, 149 B.R. 40, 45 (S.D.N.Y. 1992). With respect to the written statement, "Plaintiff need not prove that the writing constituting the false statement was entirely completed by Debtors. It is sufficient that Debtors either wrote, signed, or adopted such statement to find that the documents were 'written' by them." *Id.; see also First Fed. Savings and Loan Assoc. of Rochester v. Kelley (In re Kelley)*, 163 B.R. 27, 35 (Bankr. E.D.N.Y. 1993) ("First Federal need not establish that the document constituting the false statement was entirely written or prepared by the Debtors. It is sufficient, as a matter of law, that the Debtors either wrote, signed or adopted such statement to conclude that the document was 'written' by them.").

The PFS is unquestionably a written statement and the Defendant has expressly acknowledged that he signed it. *See* Exhibits 1 and 13 (page 57). As such, the first element of this claim has been established.

## B.   Materially False

Under Section 523(a)(2)(B)(ii) of the Code, a financial statement is "materially false" if it "paints a substantially untruthful picture of the debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Boice*, 149 B.R. at 45 (internal citation omitted); s*ee also Fed. Dep. Ins. Corp. v. Reisman (In re Reisman)*,

149 B.R. 31, 37 (Bankr. S.D.N.Y. 1993) ("A materially false statement under 11 U.S.C. § 523(a)(2)(B) is one which is substantially inaccurate."); *see also Kelley*, 163 B.R. at 35 (same).

Here, there is no genuine issue with respect to the materiality or falsity of the PFS signed by Defendant and submitted to Carver. While the Defendant represents in the PFS that he owned 100% of the Corporations, he has now acknowledged that he never owned 100% of any of the Corporations. *See* Exhibit 13 (pages 63-65).

Clearly, the Defendant's misrepresentation of companies owned by him is the type of information "which would normally affect the decision to grant credit" and, therefore, Carver has established the second element of this claim. *See Boice*, 149 B.R. at 45

## C.    The Statement Concerns the Defendant's Financial Condition

Section 523(a)(2)(B)(ii) of the Bankruptcy Code requires that the subject materially false writings concern the Defendant's financial condition. It is axiomatic that the PFS concerns the Defendant's financial condition as it seeks detailed information pertaining to his income, assets and liabilities. *See* Exhibit 1. Moreover, the title of the document - Personal Financial Statement - makes it abundantly clear that the PFS concerns the Defendant's financial condition. Thus, Carver has established the third element of this claim.

## D.    Carver Reasonably Relied Upon the PFS

"Once it has been established that a debtor has furnished a lender a materially false financial statement, the reasonableness requirement of § 523(a)(2)(B) cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith." *Gerritsen Beach Inv. Ltd. v. Jemal (In re Jemal)*, 516 B.R. 238, 245 (Bankr. E.D.N.Y. 2014) (quoting *In re Bonnanzio*, 91 F.3d 296, 305 (2d Cir. 1996). "The reasonableness of a creditor's reliance on a false statement is an objective determination, and the focus is upon the degree of care that a reasonably prudent creditor would exercise under similar circumstances." *Smith*, 2012 Bankr.

LEXIS 2060 at * 11 (internal citation omitted).  In addition, "[r]easonable reliance was made an element in 11 U.S.C. § 523(a)(2)(B) to prevent unscrupulous creditors from inducing debtors to submit false statements so that they can be later used to object to the debtor's discharge." *Reisman*, 149 B.R. at 39.  Moreover, "[t]he legislative history of 11 U.S.C. § 523(a)(2)(B) does not imply that an unscrupulous debtor who intentionally misleads a creditor as to a material fact may excuse the deception by imposing an affirmative duty upon the creditor to conduct a thorough investigation of the false information when the creditor does not know of the falsehood, or where the information on its face is sufficient to reveal the debtor's financial condition, or where the creditor's investigation does not discover the fraud." *Id.* (internal citation omitted).  In fact, "creditors are not required to conduct an investigation outside of the ordinary business practices before entering into agreements with prospective debtors." *Citik Ka Wah Bank Ltd. v. Wong (In re Wong)*, 291 B.R. 266, 275-276 (Bankr. S.D.N.Y 2003)

In reviewing the reasonableness of a creditor's decision to lend, courts should be deferential to the creditor's business judgment.  *Smith*, 2012 Bankr. LEXIS 2060 at * 12.  A "creditor does not have to prove that the false financial statement was its sole reason for extending loans; the creditor must show that the fraudulent statement was a substantial factor in causing an extension of credit." *Reisman*, 149 B.R. at 38-39.  In addition, "[i]t is established that partial reliance on a false representation in connection with an extension of credit is an adequate basis to prevent discharge of the underlying debt." *Lincoln First Bank v. Tomei (In re Tomei)*, 24 B.R. 204, 206 (Bankr. W.D.N.Y. 1982).

Carver followed its standard procedure when issuing the Loans and, in doing so, it relied on the materially false PFS when making the Loans.  *See* Raborn Aff. at ¶¶ 4, 7, 19-21.  "[A]bsent other factors, there is reasonable reliance where the creditor follows its normal business practices." *Wong*, 291 B.R. at 275 (citing *In re Cohn*, 54 F.3d 1108, 1117 (3d Cir.

1995)).  Since Carver followed its normal business practice when relying on the PFS in making the Loans, Carver has established the fourth element of the claim.

### E.    The PFS was Made or Published with Intent to Deceive

While "intent to deceive is rarely established by direct evidence" it may nonetheless "be inferred from a totality of the circumstances of the case…or it may be inferred '[w]here…a person knowingly or recklessly makes a false representation which the person knows or should know, will induce another to make a loan.'" *Smith*, 2012 Bankr. LEXIS 2060 at * 21 (internal citations omitted).  A debtor's "unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts." *Boice*, 149 B.R. at 47.  Furthermore, "[r]eckless indifference or a disregard for the accuracy of a financial statement is sufficient to establish the requisite intent." *Kelley*, 163 B.R. at 35-36.  In *Kelley*, the court concluded that "no genuine issue of material fact exists as to whether the Kelleys possessed the 'intent to deceive' within the meaning of Section 523" since "[n]o reasonable juror could conclude that the Kelleys did not recklessly submit financial statements which they knew were false." *Id.* at 36.

Here, the totality of the circumstances permits an inference that Defendant intended to deceive Carver by submitting PFS containing materially false information for the purpose of inducing Carver to make the Loans.  Considering that the Defendant never owned 100% of the Corporations, the only possible conclusion is that he intended to deceive Carver when signing and submitting the PFS which represented otherwise.

Furthermore, when signing the PFS, the Defendant expressly acknowledged that he was submitting the PFS "for the purpose of procuring, establishing and maintaining credit…with [Carver]." *See* Exhibit 1 (page 4).  Thus, there can be no doubt that the Defendant submitted the PFS with knowledge that it would be relied on by Carver when determining whether to make the Loans.  Therefore, Carver has established the fifth and final element of this claim, entitling it to

an award of summary judgment on its claim seeking a declaration that the Defendant's debt to Carver is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

## POINT II

### THE DEFENDANT SHOULD BE DENIED A DISCHARGE PURSUANT TO SECTION OF 727(A)(2) OF THE UNITED STATES BANKRUPTCY CODE

A debtor may be denied a discharge under 11 U.S.C. § 727(a)(2) if the objecting party can show, that (1) the debtor transferred, removed, destroyed or concealed any of the debtor's property; (2) such act was done with actual intent to hinder, delay or defraud a creditor; (3) such act was that of the debtor or a duly authorized agent of the debtor;  (4) such act complained of was done within the one year before the date of the filing of the petition.  11 U.S.C. § 727(a)(2); *see also Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 663 (Bankr. S.D.N.Y. 2008).  A discharge will be denied under Section 727(a)(2) of the Code  if all of the above elements are proven by a preponderance of the evidence. *Id.* at 663.

On October 1, 2012 - within one (1) year of the Filing Date - the Defendant transferred all of the assets of the Hardware Store to his wife's company. *See* Exhibit 16.  Thus, the first, third and fourth elements of this claim are clearly satisfied.

As to the second element - that the transfer was done with actual intent to hinder, delay or defraud a creditor - the Defendant's own testimony establishes his fraudulent intent when transferring the Hardware Store to NY Electric.  Indeed, during the Defendant's deposition, the following exchange took place:

> Q:     Did you transfer the hardware store to New York Electric?
>
> A:     I sold it, yes.
>
> Q:     You sold it?
>
> A:     Yes.

Q:    And at the time that you sold it, you knew that you owed money to the State for taxes; is that right?

A:    They were going to close down.

Q:    It was going to close down?

A:    Yeah.

Q:    So you transferred it to Sylvia or New York Electric so the State wouldn't shut it down?

A:    That's the reason I sold it, because she was going to lose everything.

Q:    She was going to lose it unless it was transferred to a different entity?

A:    Correct.

*See* Exhibit 13 (page 17)

Thus, the Defendant has expressly conceded that the sole reason for transferring the Hardware Store to his wife's company was to prevent the State of New York from collecting the sales taxes due and owing to it.

Even if the Defendant did not admit to this, however, the circumstances behind the transfer are sufficient to make an objective determination that such action was done with fraudulent intent. It has been routinely held that direct proof of a debtor's intent to defraud is rarely present because a debtor is unlikely to admit to subjective fraudulent intent. *See Saloman v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir. 1983); *see also Nazzaro* at 28; *see also Silverstein* 151 B.R. at 660. As a result, courts will look to several objective events, referred to as "badges of fraud" to determine whether fraudulent intent exists. *See Kaiser*, 722 F.2d at 1582. Some of the badges of fraud include: the lack or inadequacy of consideration, the family relationship between the parties and the retention of possession, benefit or use of the property in question. *Id.* at 1582-83.

The Defendant's wife, Rosa, is the sole owner of NY Electric. *See* Exhibit 14 (Pages 9-10). While the stated consideration for this transfer was $50,000.00 (*see* Exhibits 15 and 16), the

Defendant did not receive any funds or other consideration in exchange for transferring the Hardware Store to his wife's company. *See* Exhibits 13 (pages 18, 28, 32-33) and 14 (page 26). Moreover, despite the transfer occurring in October 2012, the Defendant continued operating the Hardware Store well into 2014 (while his bankruptcy case was pending). Indeed, on July 7, 2014, the Defendant submitted the Affidavit wherein he stated that that he is the president of the Hardware Store and was "presently conducting my hardware store business at the property." *See* Exhibit 17 at ¶ 1.

Considering the Defendant transferred the Hardware Store to his wife for no actual consideration, and he continued to operate the store after the transfer, several badges of fraud are present, which establish the necessary intent, thus satisfying the second element of the claim.

By virtue of the foregoing, it is respectfully submitted that the Defendant should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

**POINT III**

**THE DEFENDANT SHOULD BE DENIED A DISCHARGE PURSUANT TO SECTION
727(A)(4)(A) OF THE UNITED STATES BANKRUPTCY CODE**

The central purpose of Chapter 7 of the United States Bankruptcy Code is to provide individual debtors with a "fresh start" by way of a discharge of personal liability from most debts incurred before the filing of the petition. *See Beer Sheva Realty Corp. v. Pongvitayapanu (In re Pongvitayapanu)*, 487 B.R. 130, 138 (Bankr. E.D.N.Y. 2013). However, "[t]he discharge of a bankrupt from his debts is a privilege or favor that has been granted by Congress upon such terms as it has seen fit to impose." *Id.* (quoting *In re Stone*, 172 F. Supp. 142, 146 (E.D.N.Y. 1959)). As a condition to receiving a discharge, Congress has determined that debtors must "act in good faith and provide full and honest disclosure" and, thus, it has been held that a discharge is reserved for only the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007). Indeed, "'full and honest disclosure' is required as it 'is crucial to the effective functioning of the bankruptcy system. Because the bankruptcy court, trustees, and

13

creditors rely on the information disclosed by a debtor, the importance of full disclosure cannot be overemphasized.'" *Pongvitayapanu*, 487 B.R. at 138 (quoting *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y 2008).

Pursuant to Section 727(a)(4) of the Code, a court must deny a debtor's discharge if he or she '"knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. §727(a)(4)(A) . To prevail on a 727(a)(4)(A) claim, a plaintiff must establish the following five (5) factors: (1) "the debtor made a statement under oath"; (2) "the statement was false"; (3) "the statement related materially to the bankruptcy case"; (4) "the debtor knew the statement was false"; and (5) "the debtor made the statement with fraudulent intent." *Lisa Ng v. Adler (In re Adler)*, 494 B.R. 43, 74 (Bankr. E.D.N.Y 2013). The plaintiff has the burden of establishing the foregoing elements by a preponderance of the evidence. *See Bank of India v. Gobindram (In re Gobindram)*, 2014 Bankr. LEXIS 2808 *14 (Bankr. E.D.N.Y 2014); *see also Minsky v. Silverstein*, 151 B.R. 657, 660 (Bankr. E.D.N.Y 1993). "Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case." *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000). If a debtor fails to rebut the plaintiff's *prima facie* case, courts within this District have found it appropriate to enter summary judgment on a 727(a)(4)(A) claim in favor of the plaintiff. *See e.g. Agai v. Antoniou (In re Antoniou)*, 515 B.R. 9 (Bankr. E.D.N.Y 2014); *see also O'Connell v. DeMartino (In re DeMartino)*, 448 B.R. 122 (Bankr. E.D.N.Y 2011).

## A.    First Element - The Defendant Made Statements Under Oath

"Statements under oath include statements in documents filed with the Bankruptcy Court, such as bankruptcy schedules and statement of financial affairs filed with the petition..." *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 61 (E.D.N.Y 2010). "A false statement made or omitted as

part of a bankruptcy petition, schedule, at an examination, or during the proceeding itself may constitute a false statement under oath for purposes of §727(a)(4)(A)." *Bank of India*, 2014 Bankr. LEXIS 2808 *15 (Bankr. E.D.N.Y 2014)

Here, the Defendant signed the Declaration Concerning Debtor's Schedules, which states:

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 19 sheets, and that they are true and correct to the best of my knowledge, information, and belief.

*See* Exhibit 7.

The Defendant also signed the SOFA which states, in relevant part:

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

*Id.*

Furthermore, at the 341 Meeting, the Defendant testified, under oath, that everything contained in his Petition was true and correct. *See* Exhibit 8 (page 6). As such, the Schedules and SOFA filed by the Defendant constitute statements under oath, for purposes of the first element of a Section 727(a)(4)(A) claim.

### B.    Second Element - The Defendant's Statements Were False

"A statement is false if (1) it omits even one asset or source of income; (2) necessarily material information is repeatedly left undisclosed during a case's pendency; or (3) an affirmative misstatements (sic) is made and is not corrected during an examination or at any point during the case's proceeding." *Adler*, 494 B.R. at 75.  "The plain language of [727(a)(4)(A)] provides that one single false oath or account is sufficient to deny a debtor's discharge." *Bank of India*, 2014 LEXIS 2808 at *15.

In responding to Question 18 on the SOFA, the Defendant was required to disclose whether he "was an officer, director, partner or managing executive of a corporation, partner in a

partnership, sole proprietor, or was self-employed in a trade, profession, or other activity" in the six (6) years immediately preceding the filing of the Petition. *See* Exhibit 9 (SOFA, Question 18). Despite this, the Defendant did not disclose his ownership interest in the Hardware Store in the SOFA. *Id.* Since the Hardware Store was transferred less than one (1) year before the Filing Date, the Defendant falsely omitted the Hardware Store from his response to Question 18 on the Amended SOFA.

The Defendant also failed to disclose his ownership interest in 656 Myrtle Avenue Realty Corp. ("656 Myrtle"). In 2006, the Defendant was the President of 656 Myrtle and signed a mortgage with respect to the real property located 656 Myrtle Avenue, Brooklyn, New York on behalf of himself and as Sole Shareholder of 656 Myrtle. *See* Exhibit 18. As of September 21, 2015, the Defendant was still listed as the Chief Executive Officer of 656 Myrtle and the Defendant's residence is listed as the Principal Executive Office of 656 Myrtle. *See* Exhibit 20. Moreover, as further evidence of Defendant's current interest in 656 Myrtle, there are no documents indicating that the Defendant ever ceased being the President of 656 Myrtle. *See* Exhibit 13 (page 91, 95-96). Clearly, the Defendant was required to disclose 656 Myrtle on his Petition.

Additionally, despite the Defendant obtaining the security interest in a cash register, key cutting machine and various hardware and tools (the "Security Interest"), the Defendant omitted this from his Schedule B. *See* Exhibits 9 and 16. Similarly, although he never received any payments toward the Note, the Defendant inexplicably claimed that the Note was only worth $1.00. *See* Exhibit 9 and 13 (page 32). When asked during his deposition why he listed the Note as having a value of only $1.00, the Defendant simply stated: "I don't have an answer for that." *See* Exhibit 13 (page 33).

Furthermore, in response to Questions 1 and 2 on his SOFA, the Defendant represented that the only income earned by him in 2011 was $31,200.00 from employment. *See* Exhibits 9 (SOFA, Questions 1 and 2) and 13 (pages 33-34, 41-43). However, in March and April 2011, the Defendant received deposits into his bank account in the amount of $13,627.01 and in June and July 2011, the Defendant received deposits to his bank account in the amount of $8,475.86. *See* Exhibits 21 (page 3 of 6) and 22 (page 3 of 6). This money deposited into Defendant's bank account is not disclosed on his SOFA and the Defendant does not recall why these funds were deposited into his account or how those funds were dispersed after he withdrew them. *See* Exhibit 13 (pages 74-81).

Clearly, the Defendant's Petition contains numerous false statements and omissions, sufficient to satisfy the second element of this claim.

### C.    Third Element - The Statements Related Materially to the Bankruptcy Case

A statement or omission is "material" if it "is related to the debtor's business transactions, concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property." *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 460 (Bankr. S.D.N.Y. 2008) (internal quotations omitted). Furthermore, "[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable. This is because the bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate." *Moreo*, 437 B.R. at 65.

The Defendant's failure to disclose his corporate interests in the Petition is certainly material to this bankruptcy case. Indeed, on February 27, 2014 - after the Defendant filed his Petition - 656 Myrtle sold its real property to Chaim Green and Ester Green for $875,000.00. *See* Exhibit 19. As the sole shareholder of 656 Myrtle, any proceeds from the sale would be properly recoverable by the Chapter 7 Trustee.

Likewise, the Defendant's failure to disclose the Security Interest and his false representation that he was not owed any money pursuant to the Note directly relate to the discovery of assets.

Equally material, is the Defendant's failure to disclose all of his income from 2011. By understating his prior income, the Defendant may have dissuaded the Chapter 7 Trustee and other creditors from inquiring of the Defendant as to various pre-petition activities, such as the possible purchase and/or disposition of assets, which could have revealed potential fraudulent conveyances or preference claims. *See e.g. Agai*, 515 B.R. at 24 ("[t]he Debtor's failure to disclose his true income goes to both discovery of assets and to the disposition of his property" and is therefore "clearly material").

The Defendants numerous false statements and omissions are material, satisfying the third element of this claim.

### D.    Fourth Element - The Defendant's Knowledge

The fourth element of a successful Section 727(a)(4)(A) claim requires a showing that the Defendant's numerous false statements and omissions were made with knowledge that they were false. This is established by merely showing that the debtor knew the statement was false or made the statement with a reckless disregard for the truth. *See Pongvitayapanu*, 487 B.R. at 140 ("A statement is made with knowledge of its falsity if the debtor knew it to be false or if it was made with reckless disregard for the truth.").

It cannot be disputed that the Defendant was aware that he owned the Hardware Store within the six (6) years preceding the Filing Date. Indeed, after operating the store for numerous years, the Defendant transferred the Hardware Store to his wife's company less than one (1) year before the Filing Date amid fears that New York State was going to close the business due to Defendant's chronic failure to pay sales taxes. Even more, the Defendant was still operating the

Hardware Store after he filed his bankruptcy petition. *See* Exhibit 17 at ¶ 1. To the extent the Defendant argues that his failure to disclose the Hardware Store on his Petition was mere inadvertence, this still would not explain the Defendant's failure to amend his Petition, despite being on notice of the false statement contained therein. *See In re Nazarian*, 18 B.R. 143, 147 (Bankr. D.Md. 1982) ("[N]o carelessness could excuse the Debtor's failure to amend his schedules promptly when he had the leisure to do so.").

Moreover, the Defendant certainly had knowledge of his interest in 656 Myrtle, yet he still failed to disclose it in his Petition. To be sure, the Defendant formed 656 Myrtle in 2004 and was its owner, president and sole shareholder and, according to the Defendant, there are no documents indicating that anyone other than Defendant owns the 656 Myrtle. *See* Exhibit 13 (pages 91-96). Tellingly, when questioned about 656 Myrtle selling its real property, the Defendant stated: "When *we* sold it, the corporation, I think like -- I'm not sure when *we* sold it. I think like a year ago." *See* Exhibit 13 (page 89) (emphasis added). Thus, the Defendant was clearly aware that 656 Myrtle sold its real property after the Filing Date, yet he failed to inform the Trustee or his creditors and simply sat idly by, while valuable property of his estate was liquidated without anyone's knowledge. Therefore, Carver has established the fourth element of this claim.

### E.    Fifth Element - The Defendant's Intent to Deceive

Each of the Defendant's false statements and omissions is sufficient, in its own right, to establish the Defendant's intent to deceive the Court and his creditors. However, even if the false statements or omissions, when viewed individually, may not be sufficient to bar a debtor's discharge, those same statements and omissions, when taken as a whole, are sufficient to show fraudulent intent. *See Moreo*, 437 B.R. at 64 ("the aggregate of misstatements and omissions of fact can demonstrate a pattern of reckless disregard for the truth and intent of concealing

information from the Court and its creditors."); *see also DeMartino*, 448 B.R. at 129 ("The cumulative effect of all the falsehoods and nondisclosures in the Debtor's bankruptcy schedules and statement of financial affairs evidences the necessary fraudulent intent required by §727(a)(4)(A)"); *see also Bressler*, 387 B.R. at 462 ("For purposes of section 727(a)(4)(A), otherwise immaterial falsehoods or omissions can aggregate into a critical mass substantial enough to bar a debtor's discharge.").

Here, the Defendant's Petition contains numerous false statements and omissions, which not only calls into question the veracity of the entire Petition, but also establishes a pattern of recklessness, sufficient to find that the Defendant had the intent to deceive the Court, the Trustee and his creditors when he filed the Petition. Thus, based on the shear amount of false statements and omissions, the fifth element has been established.

Furthermore, since the debtor is usually the only person who has the ability to testify directly about his or her intent, "fraudulent intent may be deduced from the facts and circumstances of the case." *Cadle Co.*, 272 B.R. at 291 (internal quotations and citations omitted). Thus, it has been held that the fifth element of a 727(a)(4)(A) claim may also be established by showing that the Defendants had a "reckless disregard for the truth" or a "cavalier disregard of the truth." *Adler*, 494 B.R. at 77; *see also Pongvitayapanu*, 487 B.R. at 140 ("reckless disregard or indifference to the truth may also demonstrate fraudulent intent."); *see also Diorio v. Kreisler-Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d. Cir. 1964) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt...Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth...is the equivalent of fraud.") .

To determine whether the Defendant has acted with a "reckless disregard for the truth" a consideration of the following three (3) non-exclusive factors should be explored: "(a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's 'lack of sophistication' as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies." *Agai*, 515 B.R. at 24 (citing *Adler*, 494 B.R. at 77). In considering each of these factors, the only plausible result is that the Defendant acted with a reckless disregard for the truth when making his false statements and omissions.

First, the Defendant's Schedules and SOFA are of utmost importance and required the exercise of a high degree of detail and accuracy when answering. "The bankruptcy schedules and statements of affairs are carefully designed to elicit certain information necessary to the proper administration and adjudication of the case." *Pongvitayapanu*, 487 B.R. at 138 (quoting *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 715 (Bankr. D.S.C. 1995)). A debtor's accurate and detailed completion of such documents "is crucial to the effective functioning of the bankruptcy system." *Id.* (internal quotations omitted). Thus, "Debtors have a duty to carefully review the information included in their schedules and statements and insure that the information is accurate and complete." *Bank of India*, 2014 Bankr. LEXIS 2808 *25. The information required to be disclosed by the Defendant was straight-forward and specifically designed to elicit information about the Defendant's assets, financial condition and business dealings. Considering the amount of false statements and omissions contained therein, there can be no doubt that the Defendant failed to provide the "necessary attention to detail and accuracy" when completing those documents.

**Second**, the Defendant is a sophisticated businessman and investor who has owned a nightclub, numerous businesses, and several pieces of real property. *See* Exhibit 13 (pages 9-10).

**Third**, the Defendant has routinely failed to take advantage of opportunities to correct his misstatements and omissions. The fact that the Defendant has filed an amended SOFA and amended Schedule B evidences his knowledge that he had the opportunity, at any time, to file amendments to correct any of his misstatements and omissions. Yet, despite these opportunities, the Defendant has never corrected many of his misstatements and omissions and has continued to leave his creditors in the dark as to his real financial condition.

Here, the Defendant has made numerous false statements and omissions which, when taken as a whole, show that the Defendant completed the Petition with a reckless indifference to the truth, sufficient to satisfy the fifth element of a successful 727(a)(4)(A) claim.

## CONCLUSION

Based on the foregoing, it is respectfully submitted that Carver is entitled to an award of summary judgment on its First Cause of Cause seeking an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(B). In the alternative, Carver requested summary judgment on its Second and/or Fourth Causes of Action seeking to deny the discharge of Defendant, pursuant to 11 U.S.C. §§ 727(a)(2) and (4).

Dated: Garden City, New York
      June 27, 2016

                       JASPAN SCHLESINGER LLP
                       *Attorneys for Plaintiff*
                       *Carver Federal Savings Bank*

By: _____
                       Frank C. Dell'Amore, Esq.
                       300 Garden City Plaza
                       Garden City, New York 11530
                       (516) 393-8289